CARRINGTON T. MARSHALL, ADMR., v. JOHN J. THOMAS.

1. COURT HAVING ADMITTED IN EVIDENCE SEVERAL STANDARDS OF COMPARISON OF HANDWRITING CANNOT WITHDRAW PART FROM THE JURY.

Where a number of standards of handwriting have been admitted in evidence for the purpose of proving the genuineness of a signature, it is an abuse of discretion on the part of the trial judge amounting to prejudicial error to refuse to permit the jury to take to their room all the standards so introduced as exhibits.

2. THEORETICAL SPECULATIONS OF EXPERT WITNESS ON HANDWRITING IMPROPERLY ADMITTED.

An expert witness on handwriting should be confined to matters apparent on the face of the writing. He cannot be permitted by argument or inference to draw conclusions as to matters not appearing on the face of the writing, and the value of his opinion will depend upon the clearness, with which he demonstrates its correctness.

3. PRIMA FACIE EVIDENCE OF DELIVERY AND CONSIDERATION OF NOTES.

Where promissory notes are found among the papers of a decedent delivery will be presumed; and nothing else appearing, the form of such notes, stipulating that they were for value received, is *prima facie* evidence of consideration.

[Syllabus by the court.]

ERROR to Muskingum common pleas court.

**C. T. Marshall** and **G. K. Browning,** for plaintiff in error:

Cited and commented upon the following authorities. *Murphy* v. *Hagerman,* Wri. 293, 296, 298; 4 Enc. of Ev. 296; *Adams* v. *State,* 93 Ga. 166 [18 S. E. Rep. 553]; *Linch* v. *Elevator Co.* 80 Tex. 23 [15 S. W. Rep. 208]; 5 Enc. of Ev. 461; 6 Enc. of Ev. 388; 15 Am. & Eng. Enc. Law 276.

**Winn & Bassett,** for defendant in error.

## VOORHEES, J.

This action is brought by the plaintiff in error as administrator of the estate of Sarah E. Holden, deceased, upon two promissory notes, with warrants of attorney attached, both bearing date, September 21, 1898, due one year after date. Copies of which with warrant of attorney are attached to the original petition. The defendant in error answers, setting up two defenses. The first defense, after making certain admissions, denies each and every allegation contained in the first cause of action, and further denies that he ever executed and delivered to said Sarah E. Holden, or to anyone for her, the alleged promissory notes set

forth in the petition; and as a second defense to each of said notes pleads want of consideration.

The files or transcript do not show there was any reply to this answer of the defendant, but the case was tried to a jury, and the evidence was received bearing upon the issues made in the case as if a reply were filed, so we assume that there was a reply, and the issues properly joined between these parties.

The cause was submitted to a jury and resulted in a verdict for the defendant. Motion for a new trial was filed and overruled, and error is prosecuted to this court to reverse the judgment of the court below, and various grounds of error are assigned in the petition in error for a reversal of the judgment.

Without setting for the numerous errors complained of in the petition in error, the principal ones which we will consider are, errors in the admission of evidence on behalf of the defendant; error in the court's refusing to allow all the exhibits that had been admitted by the court below as standards of the genuine signature of the defendant in error, to be taken by the jury to their room for deliberation; that the verdict of the jury is against the weight of the evidence and is not supported by the evidence, and is contrary to law. The main contention in the case centers upon the question as to whether or not the court erred in its order refusing to allow all the exhibits that had been admitted by the court below as standards of the genuine signature of the defendant to be taken by the jury to their room when they retired to deliberate upon their verdict. We will consider this question first:

A large number, fifty or more of signatures and writings, admitted to be the genuine handwriting and signature of the defendant, were introduced in evidence and used as standards of comparison with the alleged signatures to the notes set forth in the petition.

At the trial, the court did not limit in any way, the number of standard signatures, that could or should be used for the purpose of comparison. These standards were all used on the trial in the examination of expert witnesses as standards of comparison with the two notes in suit. On the conclusion of the charge, the court ordered that only two of the standards should go with the jury in its deliberation. Afterwards, the court permitted two other standards to be selected for that purpose, and such selections were made, and these exhibits with the notes in suit were taken by the jury to its room during its deliberation.

The plaintiff in error took exceptions to the order of the court, limiting the number of exhibits or standards that should thus be taken by the jury.

### Marshall v. Thomas.

The general rule as to what papers may be taken by the jury, rests in the discretion of the court; and it is only when there has been an abuse of this discretion, the judgment will be reversed.

In considering this question, the nature of the issue involved is important, namely, where the genuineness of the handwriting of a party is challenged, the jury have the right to make comparisons between the standards and the writing in dispute. We have no doubt that the court may limit in a reasonable degree the number of genuine signatures or writings to be used as standards of comparison; and if the court had so limited the number in this case it would come within the sound discretion of the court; but after the court admits such standards or exhibits in evidence, it has no right to withdraw any portion of them from the jury or refuse to permit it to have all the standards so admitted, to use them in comparison with the disputed signature.

When standards are thus admitted, if the jury takes any part of them, it should take all, and when the court orders that only a part can be taken it is an abuse of discretion prejudicial to the parties concerned. It may be illustrated in this way—the court on the trial of any issue may reasonably limit the number of witnesses to be used upon any one issue involved in the suit, but after the court has permitted evidence to go to the jury on any such issue either by the testimony of witnesses or by other evidence, it would have no right to say to the jury, or direct, that certain testimony or a certain number of witnesses only are to be used in its consideration of such issue. It is not necessary to cite authorities as to the right of the jury upon a question of handwriting, to make comparisons between the disputed handwriting and that which is admitted to be the genuine handwriting of the alleged maker of the disputed signatures; and the jury may decide by comparison the issue between the parties.

Returning to the question of the court refusing to permit the jury to have all the exhibits that had been received in evidence as standards of comparison with the signature in controversy; it was held in the case of *Rainford* v. *People*. 61 Ill. 365, to be error for the court to allow the jury to take out a part of the evidence without taking all. Applying this principle here, the court was in error when he directed that only a certain number of exhibits that had been introduced in evidence as the genuine handwriting or signature of the defendant in error should be taken by the jury to its room. The jury examining and comparing the signatures of only a part of the standards, with the disputed signatures, would reason with one another as to why they should have a part of the admitted signatures, and the others were excluded from their

consideration. Their minds would naturally be impressed by the rejection, and unconsciously form conclusions from the refusal to permit them to have all of the exhibits. Little do we know the secret and insidious manner by which impressions are produced on the mind, or how slight the operating cause may be.

We think a sound discriminating discretion was not exercised in permitting only a part of the admitted standards to be taken by the jury when they retired to consider, weigh and determine upon the testimony and evidence in the case.

In refusing to allow the jury to have all the admitted standards there was prejudicial error in this case; unless the other contention of the defendant in error, was established, namely, that the notes were without consideration and were never in fact delivered to the payee named therein.

1. Were the notes without consideration?

2. Were the notes delivered to the payee?

The form of the notes, stipulating that they were given for value received, nothing else appearing, if the notes were genuine, they would be *prima facie* evidence of consideration.

Delivery is in general presumed from possession of a bill or note. So, where a note was found among the papers of a deceased payee, its proper delivery is to be presumed. *Holliday* v. *Lewis,* 4 Hun. 478. But if a note were found among papers of a deceased person who is a stranger to the note, and the representative of the deceased person makes no claim to it, no delivery to the payee will be presumed, and delivery actual or constructive must be shown. *Blanchard* v. *Sheldon,* 43 Vt. 512.

The evidence in this case shows that these notes were found among the papers of the deceased, Sarah E. Holden. Being so found their proper delivery is to be presumed until the contrary is shown.

It is also urged in argument by the plaintiff in error, that there was error in permitting the expert witness, George W. Wood, to give his reasons for the opinion he had formed, as to the signatures in question on his examination in chief, the contention being, that his reasons for his opinion or judgment should be tested by cross examination.

We do not agree with this contention; yet, we think it is proper and perhaps necessary in this case for the court to say something as to the examination in chief of an expert witness on handwriting, before he can be permitted to give an opinion, where his only knowledge is gained from a comparison of admitted genuine writing with the writing

Marshall v. Thomas.

of the disputed instrument, or, in other words, where the knowledge of the expert is gained from a comparison of admitted genuine writing with the writing in dispute.

In the case of *Koons* v. *State*, 36 Ohio St. 195, the court laid down this formula, as being requisite for the qualification of an expert witness to give an opinion:

"It must appear before such opinion is called for, that the witness has formed, or is then able to form an opinion upon the matter in question."

With the contention of the plaintiff in error, that the court erred in permitting the expert, Wood, in his examination in chief to give his reasons for the opinion or judgment he had formed we do not agree; in *Keith* v. *Lothrop*, 59 Mass. (10 Cush.) 453, the court say at page 457:

"The witness Smith who was called as an expert was rightly allowed to give his reasons for the opinion that he expressed." This point was adjudged in *Commonwealth* v. *Webster*, 59 Mass. (5 Cush.) 295, 301, and in *Collier* v. *Simpson*, 5 Car. & P. 73, Tindel, C. J., ruled, "that counsel might ask a witness who was called to testify as an expert, his judgment and the grounds of it. The value of an opinion may be increased or diminished in the estimate of the jury by reasons given for it."

It is proper on the examination of an expert, even on his examination in chief, to require him to state the reasons for his opinion, so that the jury will be enabled to estimate the value of his testimony. *People* v. *Shattuck*, 109 Cal. 673 [42 Pac. Rep. 315].

In examining the testimony of the expert, Wood, we think some parts of his testimony are objectionable, on the ground, that his opinion is formed or based upon argumentative statements, mere inferences and speculation. When an opinion is speculative, and theoretical only, it should not be received, such statements are not within the domain of expert testimony.

An expert cannot testify that a forger in imitating and disguising handwriting is more particular at the beginning than at the close of the effort; he should be confined to matters apparent on the face of the writing, he may testify to the difference in the letters or words of the writing or signature in dispute, similar characteristics or other matters as they may appear to him on the face of the writing, as for example, simulation, naturalness and the like, and may in a proper case give his opinion whether a given writing is a genuine or a feigned or forged

Muskingum County.

signature.  By comparison is meant the collation of writings in jux-taposition for the purpose of ascertaining by inspection if they were written by the same person.  Persons of experience and skill though previously unacquainted with the handwriting in question may be al-lowed to depose as to appearances perceived by them, as to the re-semblance or difference in the formation and appearance of the different letters or words, or even in the general appearance of different por-tions of the writing.  Handwriting is an art concerning which the value of an opinion is susceptible of demonstration.  The value of an opinion of a handwriting expert, must depend upon the clearness with which the expert demonstrates its correctness.  That demonstration would naturally consist in the indication of similar characteristics or lack of similar characteristics between the disputed writing and the standards, and the value of the opinion will largely depend upon the number of those characteristics which appear or are wanting.  Thus, comparison is rated after the fashion or circumstantial evidence, de-pending for strength upon the number, prominence and consistency of the links in the chain.  But the rule, as to circumstantial evidence, will not permit one inference to depend upon another inference in establish-ing the question in issue.  Therefore, the expert should be confined to matters apparent on the face of the writing, and not by argument or inference draw conclusions upon matters not appearing upon the face of the writing.

As an example of the violation of these principles in the examina-tion of the witness Wood, we will give a single example, reading from the bill of exceptions, at the bottom of page 84:

"Now, as a matter of comparing the handwriting in the two ques-tioned signatures with the handwriting in the standards, the two ex-hibits numbered 49 and 50, as well as all of the other standards in evi-dence, there is just one logical conclusion to be arrived at, and that is, that whoever wrote these two questioned signatures held the pen in an entirely different way from the manner in which the pen was held in writing any of the standards in evidence.  Now, as I have stated before, these two questioned signatures were unquestionably written with the pen held sidewise, pretty much after the fashion in which a stub pen is ordinarily held by writers who employ stub pens.  Now that is not the case, nor was it the case in writing any of the standards.  John J. Thomas, in writing his signatures as portrayed distinctly in all of his signature writing in evidence as standards, held his pen as writers ordinarily hold their pen, with the pen facing the writer.  Now that is

Marshall v. Thomas.

distinctly portrayed by the shading in the downward strokes; the heavy strokes of John J. Thomas's signature writing are made with the downward movement of the pen. In some of his signatures, in some of the standard signatures in evidence, the heavy strokes are much heavier in some instances than the others. In many instances, they are quite as heavy as some of the heavy strokes in these questioned signatures, but they are made in a different direction; they are made with a downward motion of the pen, or at any event they are not with the side motion of the pen, and therein is portrayed, in comparing the questioned signatures with the admitted signatures of John J. Thomas, an entirely different habit of holding the pen, and it portrays two extremes. There are just two ways in which a pen can be held, two extreme ways, two extremes; one in which the pen facing sidewise, and the other with the pen facing the writer. Of course, there are different modifications, from one extreme to the other, but here we have, in a comparison of the questioned signatures with the standard signatures of John J. Thomas, those two extremes.''

This is only one illustration of the method of the witness arguing in support of his opinion without stating facts that are apparent from an examination of the writings themselves, it presents no question of science and involves no rule not subject to as many variations as there might be efforts at simulating writing. The care of one man is not evidence of the care which may be exercised by another in an effort to commit a forgery, any more than is the skill of one man in executing the imitation or disguise, evidence of the skill of another. An expert cannot testify, that a forger in imitating and disguising handwriting is more particular at the beginning than at the close of the effort. These principles are well recognized by authority; 6 Enc. of Ev. 384, Subd. 3, and authorities there cited, and *Gordon Case,* 50 N. J. Eq. 397 [26 Atl. Rep. 268].

We appreciate the difficulty of establishing a definite rule for the examination of an expert witness, to separate that which is argumentative, theoretical and speculative from that which is proper illustration, in pointing out the difference in the letter or words of the writings, in the way of demonstration. We realize that the examination must be left largely to the discriminating discretion of the trial judge when the testimony is being given.

Eliminating from the testimony of the expert witness, Wood, that which would come under this rule of exclusion, we think the verdict

### Muskingum County.

of the jury is manifestly against the weight of the evidence, in finding that the signatures of John J. Thomas to Exhibits ''A'' and ''B'' are not genuine; on the contrary, the weight of the testimony is manifestly in favor of their being genuine. The witnesses who testified to the genuineness of these signatures were bank officials, men of long experience in the examination by comparison of handwritings, and the decided weight of the testimony is in favor of the genuineness of these two disputed signatures, and the jury has so disregarded the weight of the evidence in their verdict that the court is forced to the conclusion that their judgment must have been influenced largely by the incompetent evidence given by this expert, Wood, in his argumentative and speculative way of supporting his opinion that the signatures of ''A'' and ''B'' were not genuine.

We have examined the charge of the court and find no error in the charge, or in the refusal to charge as requested by the plaintiff in error, but for the reasons stated, the judgment is reversed with costs, and remanded to the common pleas for further trial and proceedings according to law. Exceptions noted.

**Donahue** and **Taggart, JJ.,** concur.